IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| LARAINE S. PASCHAL, ) | |
| ) | CIVIL ACTION NO. 0:05-2354-TLW-BM |
| Plaintiff, ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| JO ANNE B. BARNHART ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| Defendant. ) | |
| _____) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

The record shows that Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), alleging disability as of March 18, 2003 due to right knee and back problems, vasovagal syncope[1], obesity, diabetes, carpal tunnel syndrome, sleep apnea, depression, osteoarthritis, fibromyalgia[2], and incontinence. (R.pp. 48-57, 110-119, 137-140).[3]

---

[1]Vasovagal syncope is the common fainting spell, often brought on by stress or an emotionally upsetting event. See Taber's Cyclopedic Medical Dictionary (Taber's) (20th ed. 2005), available on Stat Ref Library CD-ROM (Fourth Qtr. 2005); see also Stedman's Medical Dictionary synocope (27th ed. 2000, [faintness or loss of consciousness due to reflux reduction in blood pressure].

[2]Fibromyalgia, a chronic condition recognized by the American College of Rheumatology (ACR), is inflammation of the fibrous and connective tissue, causing long-term but variable levels of muscle and joint pain, stiffness, and fatigue. Diagnosis is usually made after eliminating other conditions, as there are no confirming diagnostic tests. Brosnahan v. Barnhart, 336 F.3d 671, 672 n. 1 (8th Cir.



Plaintiff's claims were denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on December 20, 2004. (R.pp. 43-73). The ALJ thereafter denied Plaintiff's claims in a decision issued April 18, 2005. (R.pp. 14-21). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 7-10).

The Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that the Plaintiff was properly found not to be disabled.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

---

2003) (citing Jeffrey Larson, Fibromyalgia, in 2 The Gale Encyclopedia of Medicine 1326-27 (Jaqueline L. Longe, et al.eds., 2d ed. 2002)).

[3]In her original disability applications, Plaintiff only referenced her knee and back problems, her vasovagal syncope, and diabetic neuropathy, as being the causes for her alleged disability. (R.pp. 110-119, 137-140). Many of the remaining impairments cited by the Plaintiff have occurred since her initial claim of disability, but were nevertheless considered as part of Plaintiff's claim and reviewed and evaluated by the ALJ in reaching a decision in this case.

2



>  evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)). The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## Discussion

A review of the record shows that Plaintiff, who was fifty (50) years old when she alleges she became disabled, has a high school education with past relevant work experience as a motel clerk. (R.pp. 45-46). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After review of the evidence and testimony in the case, the ALJ determined that, notwithstanding the presence of "severe" impairments, Plaintiff retained the residual functional capacity to perform her past relevant work as a hotel desk clerk, and was therefore not disabled. (R.pp. 20-21 ). Plaintiff asserts that in reaching this decision, the ALJ erred by failing to adequately consider Plaintiff's incontinence and obesity in determining Plaintiff's residual functional capacity (RFC), by violating the treating physician rule and rejecting the conclusion of a board certified rheumatologist that Plaintiff has fibromyalgia, by evaluating each

3



impairment separately instead of in combination, and by improperly assessing Plaintiff's credibility in conjunction with the objective medical evidence.

After careful review and consideration of the evidence and arguments presented, the undersigned finds that there is substantial evidence in the record to support the conclusion of the ALJ that Plaintiff was not disabled as that term is defined in the Social Security Act during the relevant time period. Plaintiff's medical record does confirm that she has presented to medical personnel on numerous occasions with complaints of various maladies and infirmities, and the ALJ specifically found that this record and the evidence indicated that Plaintiff suffers from obesity, diabetes, a history of right knee surgery, a history of carpal tunnel syndrome and surgery, and a history of Morton's neuroma and surgery, impairments that are severe within the meaning of the Social Security regulations. (R.p. 15). However, the question before this Court is not whether Plaintiff has or is suffering from these impairments, but whether substantial evidence supports the ALJ's finding that Plaintiff's impairments are not of a disabling severity. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) [the mere presence of impairments does not automatically entitle a claimant to disability benefits, there must be a showing of related functional loss]; Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual function limitations]. The record contains substantial evidence to support this finding, and the decision of the Commissioner should therefore be affirmed.

**I.**

First, with respect to Plaintiff's argument that the ALJ failed to properly consider Plaintiff's obesity in making his findings, a review of the ALJ's decision shows that the ALJ did include Plaintiff's obesity as a severe impairment in his decision, specifically noting that Plaintiff

4



weighed more than 230 pounds although she was only 5' 2", and further noting that several of her doctors had encouraged her to lose weight and had discussed gastric bypass surgery with her. The ALJ also noted that Plaintiff's weight adversely effected her musculoskeletal complaints and that weight loss could improve her vasovagal syncope (R.pp. 15-16). The ALJ then further discusses the medical evidence concerning Plaintiff's ability to engage in physical activities, including her ability to stand and/or walk and engage in other postural activities, her motor strength, and other physical problems that could be exacerbated by her obesity. See generally, (R.pp. 16-18). It is unclear what further evaluation of Plaintiff's obesity Plaintiff believes was required, but in any event the undersigned can find no reversible error in the ALJ's evaluation of this infirmity.

**II.**

As for Plaintiff's argument that the ALJ failed to include any work breaks for incontinence or urinary urgency in his RFC evaluation, the ALJ did not find Plaintiff's urinary problems to be a severe impairment, specifically noting that following bladder surgery on August 24, 2004, Plaintiff's gynecologist (Dr. Albert Odom) reported that postoperatively Plaintiff was "voiding less frequently" and "having no incontinence." (R.pp. 18, 361). Indeed, Dr. Odom opined that the only problem Plaintiff was having postoperatively was that "her vaginal introitus [was] very narrow", which could cause problems sexually. (R.p. 361).

While Plaintiff notes that in a "to whom it may concern" form dated December 6, 2004, Dr. Odom wrote that "[d]ue to previous bladder problems, [Plaintiff] can not lift anything over 15 lbs.", the ALJ properly determined that no functional limitations were included in Dr. Odom's treatment notes which would support such a lifting restriction, and he therefore gave Dr. Odom's



conclusory statement "very little weight." (R.pp. 18, 360).[4] In light of the lack of supporting treatment notes from Dr. Odom, and the other medical evidence in the record indicating a greater lifting capacity for the Plaintiff (discussed herein, infra), the undersigned does not find any reversible error in the ALJ's treatment of Dr. Odom's records and opinion. See Craig v. Chater, 76 F.3d 585, 589-590 (4th Cir. 1996) [rejection of treating physician's opinion justified where the treating physician's opinion was inconsistent with substantial evidence of record]; Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence].

Further, as the ALJ did not find that Plaintiff's urinary problems constituted a severe impairment, it was not reversible error for him to fail to include any requirement for work breaks for incontinence for urinary urgency in his RFC evaluation. Prosch v. Apfel, 201 F.3d 1010, 1015 (8th Cir. 2000) [ALJ not required to include impairments in hypothetical that were unsupported by the record.]

### III.

Plaintiff makes similar complaints with respect to the ALJ's treatment of the opinions of Dr. Paul Espinoza, Dr. Mark Kutyla, both treating physicians, and consulting physician Dr. Robert Boyd. Dr. Espinoza is Plaintiff's family practice physician. When Plaintiff complained to Dr. Espinoza of right knee pain and swelling on March 12, 2003 (six days before her alleged disability onset date), Dr. Espinoza referred Plaintiff to an orthopaedic specialist, Dr. Robert DaSilva, for further evaluation. Dr. DaSilva found that Plaintiff had a torn lateral meniscus in her right knee, and performed successful surgery on May 2, 2003. (R.pp. 164, 213-214). By June 9, 2003, Dr. DaSilva

---

[4]It is interesting to also note that Dr. Odom did not, in that December 6, 2004 "to whom it may concern" form, indicate that Plaintiff was unable to return to work at that time, although that question specifically was posed. (R.p. 360).

6



noted that Plaintiff was "doing beautifully and having no problems", and released her from his care. (R.p. 205); 20 C.F.R. § 404.1527(d)(5) (2001) [opinion of a specialist about medical issues related to his or her area of specialty are entitled to more weight than the opinion of a physician who is not a specialist].

Plaintiff did thereafter return to see Dr. Espinoza on June 20, 2003, complaining of persistent right knee discomfort, but x-rays taken of her knee were unremarkable. Dr. Espinoza further noted that Plaintiff had seen Dr. DaSilva, who had recommended exercise. (R.p. 254). Dr. Espinoza also ordered an MRI of Plaintiff's lumbar spine, which was performed on July 29, 2003. This MRI showed that Plaintiff's five lumbar-type vertebrae appeared to be normally aligned, and that her intervertebral discs were intact. The reporting physician, Dr. Charles Hood, did note that Plaintiff's pedicles were congenitally shortened, predisposing Plaintiff to spinal stenosis, but stated that there was no evidence of "such on today's study." Dr. Hood concluded by stating that there was "no significant finding to account for the patient's reported back pain." (R.p. 294).

Subsequently, a bilateral lower extremity venous duplex ultrasound was performed on August 12, 2003 for review by Dr. David Stone. This ultrasound revealed no evidence of deep venous thrombosis, varicose vein disease, or other venous problems. Dr. Stone provided Dr. Espinoza's office with the results of this ultrasound, and suggested the possibility of a Morton's neuroma[5] be investigated. (R.pp. 262-263). Plaintiff was subsequently diagnosed with Morton's neuroma by Dr. Kutyla (a podiatrist), who prescribed orthotics. (R.pp. 245-246). Dr. Kutyla also

---

[5]A Morton's neuroma is a neuroma-like mass of the neurovascular bundle of the intermetatarsal spaces, located in the arch of the foot. See Taber's supra note 1; Greicus v. Liz Claiborne, Inc., No. 00-9518, 2002 WL 244598 (S.D.N.Y. 2002) ["Morton's neuroma is a benign tumor caused by compression of nerve tissue at the base of the toes."] (citing Dorland's Illustrated Medical Dictionary 1206, 1210 (29th ed. 2000))].

7



advised Plaintiff that neuropathic symptoms such as burning and numbness can be relieved in 80% of patients with this type of problem with surgical nerve decompression; (R.p. 242); and Plaintiff thereafter had surgery performed on her left foot on December 26, 2003. (R.pp. 329-331). By March 3, 2004, Plaintiff was reporting that she had no pain with some regeneration of sensation, and denied any problems since her operation. (R.p. 332). Plaintiff was released by Dr. Kutyla from his care at that time other than on a per-need basis. (R.p. 332).

On June 15, 2004, Plaintiff was examined by Dr. Boyd, a rheumatologist, for complaints of back and hip pain. After a recitation by Plaintiff of her complaints and a physical examination which reflected normal peripheral pulses without edema in Plaintiff's extremities, normal reflexes without tremor, normal motor and sensory modalities, full range of motion of the cervical spine with paralumbar tenderness, full range of motion of the shoulders with tenderness anteriorly, and tenderness or discomfort with motion in the knees and hips, Dr. Boyd diagnosed Plaintiff with central and peripheral osteoarthritis and fibromyalgia. Dr. Boyd recommended medications including Tylenol, and that Plaintiff undergo an exercise program such as a water aerobic exercise and stretching program. (R.pp. 286-288).

The ALJ reviewed this medical history and found that Plaintiff had the residual functional capacity for a range of light work[6] "reduced by restrictions which require no more than occasional balancing, stooping, kneeling, crouching and crawling; no climbing of ladders, ropes or scaffolds; no more than occasional climbing of ramps and stairs; and avoidance of hazards such as

---

[6]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).



unprotected heights and dangerous machinery". (R.pp. 19-20). In making this finding, the ALJ also noted the findings of state medical consultants Dr. Richard Weymouth and Dr. Robert Kukla. (R.p. 20). In an RFC assessment completed August 7, 2003 after a review of Plaintiff's medical records, Dr. Weymouth found that Plaintiff could perform medium work[7] with an ability to stand/walk about six hours per day, sit about six hours per day, and occasionally climb, balance, stoop, kneel, crouch, or crawl. (R.pp. 277-286). In an RFC assessment completed December 12, 2003, Dr. Kukla found that Plaintiff could perform light work with an ability to stand/walk about six hours per day, sit about six hours per day, occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders/ropes/scaffolds. (R.pp. 267-275). See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of a non-examining physicians can constitute substantial evidence to support the decision of the Commissioner].

The ALJ further noted the records of Plaintiff's cardiologist, Dr. Rodney Harrison. Dr. Harrison's records reflect that he conducted a nuclear stress test on the Plaintiff on May 22, 2003 as part of an evaluation of her vasovagal syncope, following which a diagnostic heart catherization was performed on May 29, 2003. (R.pp. 172-173, 175). This procedure revealed no coronary artery disease and good left ventricular function, and by July 23, 2003 Dr. Harrison noted that Plaintiff was reporting no chest discomfort and was "doing well from a cardiovascular standpoint." (R.pp. 178-180, 319-321).

Plaintiff argues in her brief that Dr. Espinoza has opined that Plaintiff is disabled, referencing a "to whom it may concern" letter dated November 3, 2004. However, a review of that

---

[7] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

9



letter reveals that Dr. Espinoza only stated that he would "not recommend [Plaintiff] working until the etiology of [her vasodepressor syncope] is identified." That letter further indicates that Dr. Espinoza had sent Plaintiff for a neurological exam, and was awaiting "this work-up". (R.p. 359). The ALJ did not find that this statement was evidence that Plaintiff was disabled, noting that there were no medical records reflecting any further examinations in this regard, while the records of Plaintiff's treating cardiologist did not reflect any condition of disabling severity based on Plaintiff's vasovagal syncope. (R.p. 18). The undersigned does not find any reversible error in the ALJ's treatment of this "to whom it may concern" letter in light of Dr. Harrison's findings and the lack of any contrary evidence. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly give significant weight to an assessment of an examining physician]; Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessment of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability].

With respect to Dr. Kutyla, the record reflects that he completed an RFC assessment for the Plaintiff on November 28, 2004 wherein he opined that Plaintiff could lift and/or carry only ten (10) pounds, that she could not lift or carry any weight for two hours in an eight hour day, and that she could only stand and/or walk for a total of less than two hours in an eight hour day, among other restrictions. (R.pp. 366-368). Plaintiff argues that this RFC form sets out a less than sedentary RFC, entitling Plaintiff to disability benefits. The ALJ found no support for Dr. Kutyla's assessment, however, and gave it little weight, noting that after Kutyla had performed outpatient surgery on Plaintiff's left foot on December 26, 2003, she reported great relief with no more pain, following which Dr. Kutyla had released Plaintiff from further follow-up care on March 3, 2004. (R.pp. 16-17, 329-333). The ALJ further noted that there was no indication that Dr. Kutyla saw the Plaintiff again



between her release from his care and November 2004, when he completed the RFC assessment restricting Plaintiff to a less than sedentary level of work. The ALJ found that there was no evidence of recurrence in the record, and that Dr. Kutyla's November 2004 assessment was not consistent with his own treating notes. He therefore gave the RFC assessment completed by Dr. Kutyla in November 2004 little weight. (R.p. 17). Upon consideration of Dr. Kutyla's treatment notes and the other objective medical evidence in the record in conjunction with the applicable standard for review, the undersigned is constrained to agree with the Commissioner that no reversible error is present in the ALJ's treatment of Dr. Kutyla's November 2004 RFC assessment. Craig, 76 F. 3d at 589-590; Hays, 907 F.2d at 1456; Blalock, 481 F.2d at 775.

With respect to Dr. Boyd, Plaintiff's complaint is that the ALJ rejected Dr. Boyd's conclusion that Plaintiff suffers from fibromyalgia. However, the record does not show that the ALJ actually rejected this diagnosis; rather, he stated that based on Dr. Boyd's own findings following examination of the Plaintiff, as well as a lack of any such diagnosis from other treating sources, he was "skeptical" of this diagnosis based on a one time consultative examination. (R.pp. 17-18). In any event, Dr. Boyd did not indicate in his report that Plaintiff was in any way disabled or unable to work due to his diagnosis of fibromyalgia. (R.pp. 286-288); see Trenory, 898 F.2d at 1364 [courts should properly focus not on a claimant's diagnosis, but on the claimant's actual functional limitations]; Gross, 787 F.2d at 1166 [the mere presence of an impairment is not determinative of disability absent a showing of related functional loss]; Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989) ["the mere fact that working may cause pain or discomfort does not mandate a finding of disability"]. A review of the ALJ's decision shows that he accurately related Plaintiff's objective medical findings in establishing that she could perform light work with the limitations noted in the



decision, and therefore the ALJ's treatment of Dr. Boyd's one time consultative examination contains no reversible error. <u>Ray v. Apfel</u>, No. 98-2356, 1999 WL 1267349 (4th Cir. Dec. 29, 1999) [finding that a claimant with fibromyalgia could perform a full range of light work].

## IV.

Finally, the undersigned does not find any reversible error in the ALJ's treatment of the subjective testimony or in the way he evaluated the whole of Plaintiff's impairments. The ALJ thoroughly reviewed both the medical evidence and Plaintiff's testimony as to the extent of her impairments and pain, specifically comparing her testimony with the reported effectiveness of her surgeries, as well as the skepticism expressed by some of her attending physicians with respect to the amount of pain claimed. <u>See</u> <u>generally</u>, (R.pp. 15-19, 21, 178-180, 205, 294, 319-321, 332, 361). The ALJ also properly considered the combined effect of Plaintiff's impairments on her ability to engage in gainful activity, carefully discussing all of these impairments in setting forth limitations consistent with his findings. <u>See</u> <u>Tamez v. Sullivan</u>, 888 F.2d 334, 336 (5th Cir. 1989) ["The ALJ did...consider the impairments in combination, and his statement to that effect is not, as [Plaintiff] asserts, merely a rote recital. We concluded above that substantial evidence supported the finding that [Plaintiff] was capable of light work. The ALJ's finding regarding impairments in combination was therefore not simply a formulaic cant but was properly based on an evaluation of [Plaintiff's] functional capabilities."]; <u>Lockett v. Chater</u>, No. 95-5968, 1996 WL 196220 at **1 (6th Cir. Apr. 22, 1996). The undersigned can find no reversible error in the ALJ's treatment of Plaintiff's subjective testimony or in his consideration of this testimony in conjunction with the objective medical evidence of record. <u>See</u> <u>generally</u>, <u>Hays</u>, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; <u>Blalock</u>, 483 F.2d at 775 [It is the claimant who

12



bears the burden of proving her disability]; <u>Hunter</u>, 993 F.2d at 35 [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; <u>Jolley v. Weinberger</u>, 537 F.2d 1179, 1181 (4th Cir. 1976) [finding that objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]; <u>Mickles v. Shalala</u>, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence].

## **Conclusion**

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion."  <u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984).  As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. <u>Blalock</u>, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

August 17,   2006

